UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steven Darmer,  Case No. 0: 17-CV-04309-JRT-KMM

Plaintiff,

**REPORT AND RECOMMENDATION**

v.

State Farm Fire and Casualty Company,

Defendant.

Edward E. Beckman, Hellmuth & Johnson PLLC, 8050 W 78th Street, Edina, Minnesota, 55439, counsel for plaintiff

Scott G. Williams, HKM Law Group, 30 E 7th Street, Suite 3200, Saint Paul, MN 55101, counsel for defendant

This matter is before the Court on the plaintiff Steven Darmer's Motion to Compel Appraisal. Mot., ECF No. 10. The Court conducted a hearing in this matter on January 17, 2018. Min., ECF No. 27. Because genuine issues of material fact exist related to the appraisal, the Court recommends that the motion be denied.

## BACKGROUND

In November 2016, a fire damaged Mr. Darmer's residence and Mr. Darmer filed a claim with his insurer, defendant State Farm Fire and Casualty Company. Mem. in Supp. at 1, ECF No. 11.

**The Insurance Policy**

Mr. Darmer's relevant policy limits as of August 2016 were $410,000 for dwelling loss, up to $41,000 for dwelling extension, $307,500 for personal property, and "actual loss sustained" for loss of use, often described as "additional living

expenses."[1]  Brown Decl., ¶ 14-4, Ex. N ("Policy") at 86, ECF No. 14.  The relevant provisions of Mr. Darmer's insurance policy for the Court's analysis are the "duties after loss" section, the "appraisal" section, and the "loss payment" section.  *See id.* at 112-13.  Those provisions read:

> **2. Your Duties After Loss.**  After a loss to which this insurance may apply, you shall see that the following duties are performed:
> a. give immediate notice to us or our agent . . . ;
> b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;
> c. prepare an inventory of damaged or stolen personal property.  Show in detail the quantity, description, age, replacement cost and amount of loss.  Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;
> d. as often as we reasonably require:
>   (1) exhibit the damaged property;
>   (2) provide us with records and documents we request and permit us to make copies;
>   (3) submit to and subscribe, while not in the presence of any other insured:
>     (a)  statements; and
>     (b)  examinations under oath; and
>   (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and
> e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
>   (1) the time and cause of the loss;
>         . . . .

---

[1] Mr. Darmer's policy appears to contemplate some additional coverage, like an additional 5% of the limit to pay for debris removal or reasonable costs to pay for replacement of water or steam damaged areas.  Policy at 89-90, 96.  The listed policy limits do not take these additional coverages into account.

>    (5) specifications of any damaged building and detailed estimates for repair of the damage;
>    (6) an inventory of damaged or stolen property as described in 2.c;
>    (7) receipts for additional living expenses incurred and records supporting the fair rental value loss . . . .
>
>    . . . .
>
>  **4. Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent impartial umpire. . . . The appraisers shall then set the amount of loss.
>
>    . . . .
>
>  **8. Loss payment**. We will adjust all losses with you. . . . Loss will be payable 60 days after we receive your proof of loss and:
>    a. reach agreement with you;
>    b. there is an entry of a final judgment; or
>    c. there is a filing of an appraisal award with us.

*Id.*

### Mr. Darmer's Submissions

Mr. Darmer submitted a proof of loss in late December 2016, claiming $524,800 for dwelling loss, $330,624 for personal property loss, and $65,075.20 for additional living expenses. Mem. in Opp. at 3-4, ECF No. 16. This claim exceeded the policy limits for both dwelling loss and personal property loss. At that time, despite the precise dollar figures contained in his claim, Mr. Darmer did not file an itemization or supporting documents as required by his insurance policy. *Id.* at 4.

Mr. Darmer sent a demand for appraisal in late January 2017, which State Farm rejected. Mem. in Supp. at 1. State Farm notes that Mr. Darmer "did not indicate what [he] was proposing to have appraised [or] how much [he] was seeking." Mem. in Opp. at 4. In subsequent communications, State Farm informed Mr. Darmer that it was uncertain whether there were any disputes warranting appraisal, that it wanted to

assess and adjust his claims prior to appraisal, and that it needed him to "submit a complete personal property claim and any other outstanding forms or materials not yet submitted." *Id.* at 4-5. State Farm also advised Mr. Darmer that it had provisionally selected an appraiser for use at an ultimate appraisal, if needed. *Id.* at 5.

In April 2017, Mr. Darmer's public adjuster submitted a revised proof of loss seeking over three times more compensation than in his first claim. Mem. in Supp. at 2. It included a "line item print-out of each item claimed to be lost or damaged." *Id.* The revised proof of loss reflected a total claim of $2,950,851.04, including $944,793.68 for personal property loss and $1,098,987.05 for additional living expenses incurred in the five months since the fire. Mem. in Opp. at 6. The supporting personal property inventory forms included over 3,000 items. *Id.* In its review of these documents, State Farm noticed that Mr. Darmer claimed significant spending within four years before the fire because he alleged that most of the items damaged in the fire were quite new; found that some items seemed duplicative or improperly priced; and struggled to ascertain the veracity of or basis for Mr. Darmer's additional living expenses. *Id.* at 7.

### State Farm's Requests for Information & Concerns About Claimed Losses

State Farm's specific concerns regarding the April proof of loss are described in the affidavit of Jene Jenkins-Jones, a claim specialist assigned to Mr. Darmer's case. Jenkins-Jones Aff., ECF No. 18. The revised proof of loss surprised and concerned Ms. Jenkins-Jones, "as [her] observations of the property and knowledge of [Mr. Darmer's] claim at that point did not indicate to [her] that [he] had incurred a $2 million loss for personal property and additional living expenses." *Id.*, ¶ 20. Ms. Jenkins-Jones thought the assertion that Mr. Darmer purchased $400,000 worth of personal property within four years before the fire was "very high and unusual," but could likely be easily substantiated by a "paper trail." *Id.*, ¶ 21. She was further surprised that Mr. Darmer appeared to be claiming that nearly every item in his home needed replacement when her review of the damaged home did not lead her to conclude that his personal property was rendered a total loss. *Id.*

Additionally, the documentation provided did not support Mr. Darmer's claim of $1 million dollars in additional living expenses. *Id.*, ¶ 22. State Farm specifically requested "documentation that would establish his typical spending before and after

the fire, so that State Farm could establish what amounts were *necessarily and reasonably increased* after the fire and thus used to form the basis" of his additional-living-expenses claim. *Id.* Based on the information she had, Ms. Jenkins-Jones was unable to ascertain how Mr. Darmer had incurred the claimed expenses. *Id.* Indeed, even at the hearing on this motion many months later, counsel for Mr. Darmer essentially conceded that he did not have full supporting documentation for this claim as yet, but that he would by the time of an appraisal. In her review of the supporting documentation, Ms. Jenkins-Jones concluded that the additional-living-expenses claim would also likely be substantiated or disproved by proper documentation once State Farm had received it. *Id.*

As a result of these uncertainties, State Farm requested financial records covering the four years before the fire to confirm the unusually high claimed amounts. *Id.*, ¶ 23. Despite the general ease of access to online documents of this kind, Mr. Darmer provided boxes of personal documents for inspection that "were not responsive and were not very informative." *Id.*, ¶¶ 25, 28. The boxes, which contained things as diverse as medical records and vacation photos, did not include the requested financial records, such as complete bank and credit card statements that could support Mr. Darmer's claims that he purchased hundreds of thousands of dollars in new personal property in the four years before the fire. *Id.*, ¶ 28. The disclosures did, however, give rise to further concerns for State Farm. For example, the boxes contained tax returns that seemed inconsistent with his claimed level of spending. *Id.*, ¶ 29. For instance, it appeared from Mr. Darmer's tax forms that he had $63,000 of net income in 2014, but his inventory forms indicated $115,562 in personal property purchases that year alone. *Id.*

The boxes also included documents that appeared to directly contradict the inventory forms submitted by Mr. Darmer. Ms. Jenkins-Jones found correspondence between Mr. Darmer and his public adjuster "concerning a dust collector that 'was 40 years old but [Mr. Darmer] re-built it 15 years ago.' [Mr. Darmer] stated that he paid '$50 for it.' That dust collector apparently showed up on [his] claim inventory forms as a $2,896 item that is three-years-old." *Id.*, ¶ 30. She also found an invoice for a massage chair purchased in 2016 for $3,200, which "apparently showed up on [Mr. Darmer's] inventory forms as an $8,000 item." *Id.*, ¶ 31. Ms. Jenkins-Jones further mentioned records of a drum sander purchased for $2,109 listed as $4,284.99 on the claim form and a scooter purchased for $117.84 valued at $4,692.16. *Id.*, ¶¶ 32,

33. Finally, the disclosures did not assuage any of State Farm's concerns as to the additional-living-expenses claim. *See id.*, ¶ 22.

As a result of these growing concerns, State Farm requested an examination under oath and further financial records to continue adjusting the claim. Mem. in Opp. at 7. There is a significant dispute as to whether Mr. Darmer ever fully cooperated with these requests. *Compare id.* at 7-10 *with* Reply in Supp. at 3-4, ECF No. 22. State Farm contends that it still has not received sufficient information to complete the claim-handling process despite Mr. Darmer's ongoing insistence on appraisal. Mem. in Opp. at 9-10. Mr. Darmer alleges that State Farm's requests for more information are unreasonable. Reply in Supp. at 9-11.

## LEGAL STANDARD

The Court reviews this motion to compel appraisal as a request for partial summary judgment. In *McCoy v. American Family Mutual Insurance Co.,* the plaintiffs alleged that the defendant insurance company breached the insurance policy by refusing to engage in an appraisal process and sought specific performance of the appraisal provision of their policy. No. 15-cv-4336 (WMW/HB), 189 F. Supp. 3d 896, 900 (D. Minn. 2016). The court analyzed this claim as "a motion for partial summary judgment, seeking specific performance of the Policy's appraisal provision." *Id.* Similarly, in *St. Panteleimon Russian Orthodox Church, Inc. v. Church Mutual Insurance Co.*, the plaintiff's "claims for declaratory judgment and breach of contract assert[ed] that Plaintiff [was] entitled to an appraisal," which the court interpreted as "a ruling on the merits of a portion of the claims" necessitating a partial summary judgment standard. No. 13-cv-1977 (SRN/HB), 2015 WL 283044, at *3 (D. Minn. Jan. 22, 2015). The court again applied the partial summary judgment standard to a motion to compel appraisal in *Snyder v. American Family Mutual Insurance Co.* No. 16-cv-458 (DWF/JSM), 2016 WL 5796838, at *3 (D. Minn. Oct. 3, 2016).

Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, "the court views the facts in the light most favorable to the nonmoving party." *McCoy*, 189 F. Supp. 3d at 900. The movant bears the burden of showing there is no dispute as to material facts. *Id.* Courts look with particular caution at pre-discovery summary judgment motions. *See Brown v. Ameriprise Fin. Servs., Inc.,* 707 F. Supp. 2d 971, 979 (D. Minn. 2010) (denying a

motion for summary judgment before the nonmovant "had the benefit of discovery") (citing *Stanback v. Best Diversified Prods., Inc.,* 180 F.3d 903, 911 (8th Cir. 1999) ("[S]ummary judgment is proper only after the non-movant has had adequate time to engage in discovery."); *Hiraide v. Vast Sys. Tech Corp.,* No. C-08-4714, 2009 WL 2390352, at *3 (N.D. Cal. Aug. 3, 2009) (declining to address enforceability and validity of contract without discovery); *Terrell v. Uniscribe Prof'l Servs., Inc.*, 348 F. Supp. 2d 890, 894-95 (N.D. Ohio 2004) (same)).[2]

At bottom, the question of appraisal here is a contract dispute related to Mr. Darmer's insurance policy.[3]  *See* Mem. in Supp. at 4 ("Plaintiff is entitled to an appraisal under the language of the policy . . . ."). As in *McCoy*, this matter is brought pursuant to diversity jurisdiction, so Minnesota contract law applies. 189 F. Supp. 3d at 900. To prevail on a breach-of-contract claim, Mr. Darmer must "prove that (1) an agreement was formed, (2) the plaintiff performed any conditions precedent to his or her demand of performance by the defendant, and (3) the defendant breached the contract." *Id.* (citing *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 84 N.W.2d 539, 543 (Minn. 2014)). When interpreting contracts, courts consider the whole document and "attempt to harmonize all clauses of the contract." *Id.* (quotation omitted).

## ANALYSIS

Mr. Darmer characterizes State Farm as taking "the position that document productions, and examinations under oath, are a condition precedent to the policy."

---

[2] Though State Farm did not file an affidavit pursuant to Rule 56(d) indicating its opposition to summary judgment on the grounds of lacking discovery, likely because this is not formally a Rule 56 motion, the entirety of State Farm's memorandum focuses on its need for additional information. *See* Fed. R. Civ. P. 56(d).

[3] Though Mr. Darmer at times suggests his claim is both statutory and contractual, he notes that the policy is a "'contract voluntarily made by the parties, notwithstanding the form is prescribed by statute.'" Mem. in Supp. at 3 (quoting *Itasca Paper Co. v. Niagara Fire Ins. Co.*, 220 N.W. 425, 426, 175 Minn. 73, 76 (1928)).  And he concedes that "[t]he policy in this case necessarily contains an appraisal clause that complies with Minnesota statutory law establishing the Minnesota standard fire insurance policy." *Id.* Moreover, Minnesota Statute § 65A.01 does not create a private cause of action. *See Nelson v. Amer. Family Mut. Ins.*, No. 13-cv-607 (SRN/SER), 2013 WL 5745384, at *19 n.17 (D. Minn. Oct. 23, 2013). For these reasons, the Court analyzes Mr. Darmer's claims only as breach-of-contract claims.

Mem. in Supp. at 2.  He argues that such conditions precedent are contrary to law and that appraisal must proceed whenever demanded.  *Id.* at 5-8.  But State Farm argues that appraisal is only warranted when there is an actual disagreement as to the value of an insurance claim.  Mem. in Opp. at 17.  It asserts that, without the requested information, it cannot complete its claim handling to arrive at a value which could warrant appraisal by virtue of disagreement with Mr. Darmer's claims.  *Id.* at 10.  Because there is significant dispute regarding material facts, the Court recommends denial of Mr. Darmer's motion to compel appraisal.

### A. The Policy's Requirements

To determine whether State Farm must comply with the appraisal provision, the Court must first determine what the insurance policy at issue requires.  As noted above, the appraisal clause begins by requiring a disagreement as to the amount of loss.  Policy at 113.  Mr. Darmer argues that the parties disagree on the amount of loss except as to the dwelling.  Mem. in Supp. at 4.  But State Farm asserts that, "[u]ntil the insurer has a reasonable opportunity to investigate and adjust the claim, there is no 'failure to agree' on the amount of loss as required to trigger an appraisal."  Mem. in Opp. at 17.  And State Farm contends that it has not yet been able to determine the amount of loss in order to reach a failure to agree, in large part because of Mr. Darmer's failure to provide requested documentation to support his claims.  *Id.* at 27.

The policy does not explicitly define when a failure to agree on the amount of loss is ripe enough to trigger appraisal.  But the "conditions" section of the policy provides context for the term "amount of loss" as it appears in the appraisal provision, and thereby guides the Court's analysis.  Specifically, the insured's duties after loss include preparation of an inventory that states "in detail the quantity, description, age, replacement cost and amount of loss," including "all bills, receipts and related documents that substantiate the figures in the inventory."  Policy at 112.  The policy also sets forth the duty to provide within 60 days of the loss a "signed, sworn proof of loss which sets forth" the inventory previously described and "receipts for additional living expenses incurred."  *Id.* at 112-13.  Given this language, the contract clearly contemplates that a claim by the insured for an amount of loss be accompanied by supporting documentation, which allows the insurer to evaluate the validity of that claim and to determine the amount of loss.

-8-

### B. Partial Summary Judgment

Against this backdrop of what the policy requires, the Court must consider whether Mr. Darmer is entitled to partial summary judgment through his motion to compel appraisal. To succeed at this stage, Mr. Darmer must show that there are no genuine issues of material fact as to his contract claim. For several reasons, Mr. Darmer fails to make the required showing.

Mr. Darmer's reading of the insurance policy to permit him to demand an appraisal without complying with his obligations to substantiate his claimed losses is unpersuasive. Mr. Darmer asserts that he has complied with his obligations under the policy. Reply in Supp. at 9-11. However, this argument requires a determination that he has satisfied all reasonable requests, that any further documents are not "reasonably required" under the policy, and that he is therefore justified in his refusal to provide additional documents prior to appraisal. *See* Policy at 112 (requiring records, documents, and examinations under oath "as often as [State Farm] reasonably require[s]"). Given the discrepancies outlined above, the Court is not persuaded that further requests for information are unreasonable or, more importantly, that they are not contemplated by the insurance policy. The record in fact supports the reasonableness of State Farm's efforts to further investigate the claims. Instead, Mr. Darmer's argument seems to seek an end-run around the logical policy requirements in place to allow an insurance company to investigate claims before submitting to a binding appraisal to set the amount of payment. His interpretation is inconsistent with the remainder of the policy and with the general function of insurance-claim adjustment. The interpretation suggested by State Farm, which provides for an insurer's reasonable investigation of a claim and determination of an amount of loss prior to appraisal, allows the appraisal clause to be harmonized with the remainder of the policy as contract law prefers. *See* Mem. in Opp. at 17, 19.

Even if Mr. Darmer is correct that reasonable limitations can be read into the policy on State Farm's ability to continue to seek information and delay appraisal, there is a very significant factual disagreement between the parties about whether Mr. Darmer has satisfied his obligations under any reading of the policy. The back-and-forth argumentative affidavits and accompanying exhibits submitted by both sides on this issue amply demonstrate the existence of a meaningful dispute as to whether Mr. Darmer has performed his duties under the policy. *See* Darmer Decl., ECF No. 12; Beckmann Decl., ECF No. 13; Brown Decl.; Darmer Aff., ECF No. 23;

2d Brown Decl., ECF No. 24; 2d Beckmann Decl., ECF No. 25; Truman Decl., ECF No. 27; 3d Beckmann Decl., ECF No 28; 3d Brown Decl., ECF No. 29 (submitted in support of the position that Mr. Darmer has complied with his obligations).  *But see* Williams Aff, ECF No. 17; Jenkins-Jones Aff; 2d Williams Aff., ECF No. 30; 2d Jenkins-Jones Aff., ECF No. 31 (submitted in support of the position that Mr. Darmer has not satisfied his obligations).[4]  This dispute goes to the core of Mr. Darmer's underlying contract claim, and he therefore fails to satisfy the partial summary judgment standard requiring that no issues of material fact remain.

Another court in this district considered similar arguments in *St. Panteleimon Russian Orthodox Church* and likewise concluded that partial summary judgment was inappropriate.  2015 WL 283044, at *3-7.  In that case, the insured church provided a proof of loss alleging damage to its roof that reached the policy limits.  *Id.*, at *2.  The insurer refused the church's subsequent demand for appraisal because the church did not submit sufficient documentation supporting its claim.  *Id.*, at *3.  When the church filed a motion to compel appraisal pursuant to the policy's appraisal clause, the insurer argued that the clause had not yet been triggered because the church had not satisfied its obligation to "provide complete information, including a supported proof of loss."  *Id.*, at *5.  The court found that "the appraisal provision plainly requires [the church] to satisfy its obligation to provide information supporting its claim and the amount of loss claimed before there can be a disagreement on the amount of loss sufficient to trigger the appraisal process."  *Id.* (quotation omitted).  Because the court in that case could not determine whether the church had complied with its obligations under the policy to trigger the appraisal clause, it denied the motion to compel appraisal.  *Id.*, at *6-7.  This proposition finds support in other jurisdictions, though the Court recognizes that authority is nonbinding.  *See, e.g., 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 965 F. Supp. 2d 1386, 1399-1400 (S.D. Fla. 2013) ("Before appraisal

---

[4] On February 20, 2018, State Farm requested permission to file a "short supplement" of emails which "contain comments regarding [Mr. Darmer's] motivation in seeking appraisal and whether [he] intended to cooperate with State Farm during the adjustment of his claim prior to appraisal."  Def.'s Letter to Mag. J., ECF No. 32.  Mr. Darmer responded the following day by filing a letter arguing that "a second round of post-hearing affidavits" should not be allowed.  Pl.'s Letter to Mag. J., ECF No. 33.  The Court has sufficient information in the record without the supplemental emails to recommend denial of Mr. Darmer's motion.  State Farm's request is therefore denied.

can be invoked, an insured must comply with the policy's post-loss conditions."); *Hailey v. Auto-Owners Ins. Co*, 640 S.E.2d 849, 687 (N.C. Ct. App. 2007) (requiring compliance with post-loss duties prior to invoking appraisal); *U.S. Fid. & Guar. Co. v. Romay*, 744 So.2d 467, 471 (Fla. Dist. Ct. App. 2004) ("There exists but one reasonable interpretation of the terms of the policy at issue here: The insured must comply with all of the policy's post-loss obligations before the appraisal clause is triggered.").

Mr. Darmer argues that *St. Panteleimon* supports compelling appraisal in this case because he has "fully and completely demonstrated the contours of his claim by specifically itemizing how he valued his property with supportive documentation," doing "far more than what the insured was required to do in *St. Panteleimon*." Reply in Supp. at 9. But, as noted above, the extent of Mr. Darmer's compliance with the policy's disclosure requirements is the exact subject of significant dispute in this matter. Indeed, the record suggests that State Farm's reasonable requests for information have yet to be satisfied. And because the Court must take all inferences in favor of the State Farm as the nonmovant in this partial summary judgment motion, the Court cannot conclude that Mr. Darmer has, as a matter of law, complied with his obligations under the policy to trigger appraisal.

### C. *Nathe Bros., Inc. v. American National Fire Insurance Co.*

Finally, Mr. Darmer's argument that State Farm has effectively imposed an impermissible condition precedent to appraisal contrary to law is unavailing. Mem. in Supp. at 4-9; Reply in Supp. at 5-6. Mr. Darmer relies on *Nathe Bros., Inc. v. American National Fire Insurance Co.*, but a close reading of that case demonstrates that it does not support his position. 615 N.W.2d 341 (Minn. 2000). In *Nathe Bros.*, the Minnesota Supreme Court considered "the sole question of whether the failure to submit a timely proof of loss will operate as a bar to any recovery under either American National's policy or Minnesota's Standard Fire Insurance Policy." *Id.* at 344. The court held "that Nathe Brothers' submission of its sworn proof of loss after 60 days does not operate as an automatic bar to recovery on its policy with American National." *Id.* at 349. In other words, *Nathe Bros.* specifically addressed whether untimely submission was a bar to recovery, not whether an insured could recover benefits without providing support for a proof of loss. And in this case, the issue is not ultimate recovery for Mr. Darmer—something that State Farm has yet to decide—but whether he can compel appraisal at this stage. Nothing in the *Nathe Bros.*

-11-

decision undermines the Court's decision that significant disputes of material fact remain. The narrow *Nathe Bros.* holding does not prescribe the Court's ruling in this case.

## RECOMMENDATION

Though the Court does not decide whether Mr. Darmer's claims were valued correctly, significant questions remain for both the Court and State Farm based on the discrepancies noted above and the unmet but reasonable requests for information. Partial summary judgment is therefore inappropriate and the Court recommends that Mr. Darmer's motion to compel appraisal be denied.

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** the plaintiff's Motion to Compel Appraisal (**ECF No. 10**) be **DENIED.**

Date: February 26, 2018            *s/ Katherine Menendez*
                                   Katherine Menendez
                                   United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.