UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

STEVEN DARMER,

                               Civil No. 17-4309 (JRT/KMM)

                Plaintiff,

v.                           **MEMORANDUM OPINION**
                                                 **AND ORDER ADOPTING REPORT**
STATE FARM FIRE AND CASUALTY       **AND RECOMMENDATION**
COMPANY,

                Defendant.

      Edward E. Beckmann, **HELLMUTH & JOHNSON PLLC**, 8050 West Seventy-Eighth Street, Edina, Minnesota 55439, for plaintiff.

      Michelle D. Christensen and Scott G. Williams, **HKM LAW GROUP**, 30 East Seventh Street, Suite 3200, Saint Paul, MN 55101, for defendant.

Plaintiff Steven Darmer brings this insurance action against Defendant State Farm and Casualty Company ("State Farm") seeking an order compelling appraisal and a judgment awarding the amount of loss determined by the appraiser. Magistrate Judge Katherine Menendez issued a Report and Recommendation ("R&R") recommending that the Court deny Darmer's Motion to Compel Appraisal. The Court has independently reviewed the files, records, and proceedings. Because the Court concludes that a genuine issue of material fact exists with respect to whether Darmer has satisfied his "duties after loss" under the Policy, the Court will deny Darmer's motion.

# BACKGROUND

## I. FACTUAL BACKGROUND

In November 2016, a fire damaged Darmer's residence. (Decl. of Steve Darmer ¶ 2, Nov. 16, 2017, Docket No. 12.) Darmer filed a claim with his insurer, State Farm. (Aff. of Jene Jenkins-Jones ("Jenkins-Jones Aff.") ¶¶ 2-6, Dec. 7, 2017, Docket No. 18.)

### A. The Policy

Darmer has a homeowners-insurance policy with State Farm. (Decl. of Troy D. Brown ¶ 14, Ex. N ("Policy") at 98, Nov. 16, 2017, Docket No. 14-4.) Three provisions of the Policy are relevant to the current motion:

> 2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:
> a. give immediate notice to us or our agent. . . ;
> c. **prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;**
> d. **as often as we reasonably require**:
>    (1) exhibit the damaged property;
>    **(2) provide us with records and documents we request and permit us to make copies;**
>    (3) submit to and subscribe, while not in the presence of any other **insured**:
>       (a) statements; and
>       (b) examinations under oath; and
>    (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
(1) the time and cause of the loss; . . .
(5) specifications of any damaged building and detailed estimates for repair of the damage;
**(6) an inventory of damaged or stolen personal property described in 2.c;**
(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

. . . .

4. **Appraisal**. If you and we **fail to agree on the amount of loss**, either one can demand that the amount of the loss be set by appraisal. . . . The appraisers shall then set the amount of the loss.

. . . .

8. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:
a. reach agreement with you;
b. there is an entry of a final judgment; or
c. there is a filing of an appraisal award with us.

(Policy at 112-13 (emphasis added).)

### B. Darmer's Claim

In December 2016, Darmer submitted a proof of loss, claiming $524,800 for dwelling loss (including $44,083.20 for "other structures"), $330,624 for personal-property loss, and $65,075.20 for additional living expenses – a total claim of $920,499.20. (Jenkins-Jones Aff. ¶¶ 4, 9; *id.* ¶ 9, Ex. 1 at 2.) Darmer did not submit personal-property

-3-

inventory forms or other required documents with the proof of loss. (Jenkins-Jones Aff. ¶ 9.)

In January 2017, Darmer sent a demand for appraisal. (Decl. of Edward E. Beckmann ("Beckmann Decl.") ¶ 2, Ex. A at 1, Nov. 16, 2017, Docket No. 13.) State Farm's attorney replied: "[I]t is unclear at this time whether there are any disputes that will require appraisal in relation to those coverages. Indeed, State Farm is waiting for Mr. Darmer to submit his personal property inventory forms so it can proceed to complete its processing and evaluation of his claimed personal property loss." (Aff. of Scott G. Williams ("Williams Aff.") ¶ 2, Ex. 3 at 3, Dec. 7, 2017, Docket No. 17-1.) The attorney then suggested that the parties "hold off on moving forward with any appraisal until after it is known what Mr. Darmer is claiming and what State Farm is offering to pay." (*Id.*) In a follow-up e-mail, State Farm's attorney stated that "the best way to move this matter forward is to have Mr. Darmer complete his submission of his personal property claim to State Farm, as well as to have him complete any other outstanding forms or materials that have not yet been submitted." (Williams Aff. ¶ 3, Ex. 4 at 6.)

In April 2017, Darmer's public adjuster submitted a revised proof of loss, claiming a $2,950,851.04 loss. (Decl. of Troy D. Brown ¶¶ 1-2, Ex. A at 1-2, Nov. 16, 2017, Docket No. 14-1.) State Farm's claim specialist expressed concern over the amount because her "observations of the property and knowledge of [Darmer's] claim at that point did not indicate to [her] that [Darmer] had incurred a $2 million loss for personal property and additional living expenses." (Jenkins-Jones Aff. ¶ 20.) Accompanying the revised proof of loss, Darmer submitted an inventory of more than 3,200 items, a significant number of

which were listed as purchased in the last four years. (Jenkins-Jones Aff. ¶ 21, 20 Ex. 10 at 7-58.)

On May 15, 2017, State Farm requested that Darmer appear for an examination under oath and submit financial records to substantiate his claimed loss. (Williams Aff. ¶ 9, Ex. 12 at 23-25.) Darmer's attorney refused to provide State Farm with the documents directly, but stated that he would allow State Farm to examine the documents at his office and suggested that State Farm "bring a copier machine as the documentation is voluminous." (Williams Aff. ¶ 10, Ex. 13 at 28.) State Farm's claim specialist reviewed the documents but found that many of the documents were nonresponsive. (Jenkins-Jones Aff. ¶ 28.) Additionally, the documents that were produced revealed a number of discrepancies between the purchase price and reported loss of Darmer's property. (*Id.* ¶¶ 29-35.) Following inspection, State Farm's attorney e-mailed Darmer's attorney requesting documents that were responsive to the May 15 request. (Williams Aff. ¶ 12, Ex. 15 at 34.) For several months, State Farm continued to seek documents from Darmer. (Jenkins-Jones Aff. ¶¶ 37-39.) During this time, the examination under oath was delayed.

On September 20, 2017, State Farm's attorney e-mailed Darmer's attorney stating that State Farm intended to schedule the examination under oath:

> We need to keep this claim moving and get an [examination under oath] on the calendar. We are not interested in another round of debate about the boxes. We reviewed each of the boxes in early June and immediately noted what was in there, as well as what was not produced. Thereafter, we've waited more than three months for someone to either send us missing documents claimed to be in there (which we initially noted were not in there, and which we now know never were in there) or to spend a half hour accessing the missing documents online

> in order to produce them and move forward. Nothing has
> happened. . . . Mr. Darmer's refusal to produce the documents
> is duly noted, and we're going to move forward with an
> [examination under oath] . . . .

(Williams Aff. ¶ 14, Ex. 18 at 65.)

## II.    PROCEDURAL BACKGROUND

Darmer brought this action against State Farm for (1) declaratory judgment, (2) breach of contract, (3) violation of the Minnesota Human Rights Act, and (4) negligent supervision. (Compl., Sept. 19, 2017, Docket No. 1.) Darmer requested that the Court order appraisal, deny State Farm the right to an appraiser for the appraisal proceeding, and enter judgment in the amount determined by the appraiser. (*Id.* at 9-10.)

On November 16, 2017, Darmer brought a Motion to Compel Appraisal. (Mot., Nov. 16, 2017, Docket No. 10.) The Magistrate Judge held a hearing on the motion, (Minute Entry, Jan. 17, 2018, Docket No. 27), and issued an R&R recommending that the Court deny Darmer's motion, (R&R, Feb. 26, 2018, Docket No. 34). Darmer objected to the R&R. (Obj., Mar. 12, 2018, Docket No. 35.)

## DISCUSSION

## I.    STANDARD OF REVIEW

Upon the filing of an R&R by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The district judge must determine *de novo*

any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). Darmer timely objected to the R&R.[1]

The Court considers the Motion to Compel Appraisal as a motion for partial summary judgment seeking specific performance of the Policy's appraisal provision. *See McCoy v. Am. Family Mut. Ins. Co.*, 189 F. Supp. 3d 896, 900 (D. Minn. 2016); *Dewall v. Am. Family Mut. Ins. Co.*, No. 15-1954, 2015 WL 5719143, at *1 (D. Minn. Sept. 29, 2015). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1] State Farm notes that Darmer failed to "promptly arrange for transcribing of the record" as required under Minn. L.R. 72.2(b)(2). (Resp. to Objs. at 3, Mar. 26, 2018, Docket No. 39.) State Farm argues that Darmer's failure to provide a transcript "deprives the Court with important context and information regarding issues addressed at the hearing and in the Report and Recommendation." (*Id*. at 4.) However, the Court finds that Darmer's objections are not based on what occurred during the proceedings. Therefore, the Court concludes that it may address Darmer's objections without the benefit of the transcripts. *DRB #24, LLC, v. City of Minneapolis*, 976 F. Supp. 2d 1079, 1085 n.4 (D. Minn. 2013).

Sitting in diversity, the Court applies Minnesota substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

## II. MOTION TO COMPEL APPRAISAL

Darmer argues that he is entitled to appraisal under both (1) Minn. Stat. § 65A.01, subd. 3, and (2) the Policy. The Court will conclude that Darmer is not entitled to summary judgment under either theory.

### A. Statutory Argument

First, the Court must consider whether Darmer is entitled to appraisal under Minn. Stat. § 65A.01, subd. 3. The Court will conclude that the statute does not afford Darmer a cause of action to compel appraisal in this case.

Minn. Stat. § 65A.01 provides Minnesota's standard fire-insurance policy. *Poehler v. Cincinatti Ins. Co.*, 899 N.W.2d 135, 143 (Minn. 2017). The standard fire-insurance policy requires the use of a provision concerning appraisal. Minn. Stat. § 65A.01, subd. 3. Such a provision is "mandatory" and "may not be omitted, changed, or waived." *Poehler*, 899 N.W.2d at 144-45 (quoting *Watson v. United Servs. Auto Ass'n*, 566 N.W.2d 683, 690 (Minn. 1997)). But "the statute is not applicable when the parties have agreed to an insurance policy that affords the insured the minimum coverage required by the statute." *Id.* Both the statute and the Policy only require appraisal when the parties fail to agree on the amount of loss. *Compare* (Policy at 113), *with* Minn. Stat. § 65A.01, subd. 3. The Policy contains the same requirements as the standard fire-insurance policy under the statute. *Compare* (Policy at 113), *with* Minn. Stat. § 65A.01, subd. 3. Even Darmer

concedes that the Policy complies with the statute. (Mem. Supp. at 3, Nov. 16, 2017, Docket No. 11.) Therefore, State Farm has not violated the statute.

Moreover, the statute does not provide a cause of action to challenge a breach of the standard fire-insurance policy – at least where the agreed upon policy complies with the statute. If appraisal is required, it is because State Farm breached its **contractual obligations** under the Policy. Accordingly, the Court will consider Darmer's claim as a breach-of-contract claim.

### B. Breach-of-Contract Claim

Having disposed of Darmer's statutory arguments, the Court must consider whether State Farm has breached the contract by failing to comply with the appraisal provision. The Court will conclude that summary judgment is inappropriate because a genuine issue of material fact remains with respect to whether Darmer has complied with his duty to provide State Farm information about the loss. (Policy at 113-14.)

To prevail on a breach-of-contract claim under Minnesota law, the plaintiff must prove "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by defendant, (3) breach of contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quoting *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)). An insurance policy "must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310-11 (Minn. 1989) (citing *Henning Nelson Const. Co. v. Fireman's Fund American Life Ins.*

*Co.*, 383 N.W.2d 645, 652 (Minn. 1986)). Any ambiguities will "be construed in favor of the insured." *Id.* at 310. "The reviewing court may not, however, read an ambiguity into the plain language of an insurance contract." *Id.*

Under the appraisal provision, either the insurer or State Farm may demand "that the amount of the loss be set by appraisal" if the insured and State Farm "fail to agree on the amount of loss." (Policy at 113.) The Policy does not define what it means for the parties to "fail to agree on the amount of loss." However, implicit in this provision is that State Farm must actually be able to value the amount of loss. There can be no disagreement if State Farm cannot independently assess the amount of loss. Therefore, State Farm must have sufficient information about the purported loss to make this valuation.

When read as a whole, the Policy unambiguously envisions that the insured will provide State Farm with sufficient information to value the amount of loss. The Policy's "conditions" section provides a list of "duties after loss" for the insured. (*Id.* at 112.) The insured must "prepare an inventory of damaged or stolen personal property" and "[s]how in detail the quantity, description, age, replacement cost and amount of loss," with "all bills, receipts and related documents that substantiate the figures in the inventory" attached. (*Id.*) The insured must also – as often as State Farm "reasonably require[s]" – "provide [State Farm] with records and documents [it] request[s] and permit [it] to make copies." (*Id.*) Moreover, the insured is required to provide a signed, sworn proof of loss with the inventory and the substantiating documents. (*Id.* at 112-13.) Without this documentation, State Farm lacks the information necessary to value the amount of loss. The Court concludes that, pursuant to the Policy, the insured is not permitted to demand appraisal

without reasonably complying with his or her "duties after loss." *See Lyon Fin. Servs., Inc.*, 848 N.W.2d at 543.

Another court in this District reached a similar conclusion in interpreting a similar policy. *St. Panteleimon Russian Orthodox Church. v. Church Mut. Ins. Co.*, No. 13-1977, 2013 WL 6190400, at *5 (D. Minn. Nov. 27, 2013). In that case, the court denied the plaintiff's motion to compel appraisal because the plaintiff failed to provide adequate documentation to the insurer to support its claim. *Id.* at *5-*6. After examining the appraisal provisions and the plaintiffs' duties under the policy, the court concluded: "Reading these two provisions together and in light of the contract as a whole, the appraisal provision plainly requires the [plaintiff] to satisfy its obligation to provide information supporting its claim and the amount of loss claimed before there can be a 'disagree[ment] on . . . the amount of loss' sufficient to trigger the appraisal process." *Id.* at *5. The court found that a genuine issue of material fact existed with respect to whether the plaintiff complied with its obligations because, while the plaintiff claimed to have provided the necessary information, it was unclear what information was ever provided to the insurer.[2] *Id.* at *6.

A genuine issue of material exists with respect to whether Darmer has reasonably complied with his "duties after loss" and whether he has satisfied all reasonable requests

---

[2] Darmer argues that the Minnesota Supreme Court's decision in *Nathe Bros., Inc. v. American National Fire Insurance Co.* prohibits State Farm from using discovery-style questions as a precondition to the right to appraisal. 615 N.W.2d 341 (Minn. 2000). The Court concludes that *Nathe Bros.* is inapposite because that case considered whether the untimely submission of proof of loss completely barred recovery.

made by State Farm. Both parties have submitted conflicting affidavits and evidence demonstrating a meaningful dispute as to whether Darmer has performed his "duties after loss." A few examples of Darmer's attempts at "compliance" are noteworthy. First, many of the documents that Darmer provided State Farm, which included vacation photos, were nonresponsive and irrelevant to valuing the amount of loss. (Jenkins-Jones Aff. ¶ 28.) Second, the documents produced suggest that Darmer inflated the value of items on the inventory he submitted to State Farm. For example, an invoice shows that Darmer purchased a scooter for $117.84 in March 2013, but Darmer reported the value of the scooter as $4,692.16. (*Id.* ¶ 33.) Third, in 2016, Darmer reported a loss of "Home and Contents" of $235,000 to the IRS but claimed a $2.9 million loss with State Farm. (*Id.* ¶ 34.)

In order to grant Darmer's motion, the Court would need to conclude – as a matter of law – that Darmer has complied with State Farm's requests for information, thereby satisfying his obligations under the Policy. The Court cannot reach such a conclusion. To the contrary, the Court has a difficult time understanding – on this record – why Darmer believes that he has made a good-faith effort to comply with State Farm's reasonable requests. The record before the Court suggests that Darmer attempted to mislead State Farm about the value of his loss. Perhaps Darmer will be able to produce sufficient evidence to substantiate these discrepancies. On the record currently before the Court, Darmer has come nowhere close to establishing – for purposes of summary judgment – that he complied with his "duties after loss." The Court acknowledges that, if there were evidence that State Farm had made unreasonable requests for documentation to avoid

appraisal, a reasonable factfinder could conclude that State Farm breached the contract. However, the evidence does not indisputably support such a finding at summary judgment.

Darmer argues that State Farm has waived its right to contest the amount of loss by refusing to participate in the appraisal process. *See Itasca Paper Co. v. Niagara Fire Ins. Co.*, 220 N.W. 425, 427 (Minn. 1928) (concluding that insurer waived right to contest loss by refusing to participate in appraisal process). To the contrary, in an e-mail to Darmer's attorney, State Farm insisted that it "is not going to waive any rights or conditions under the policy in order to conduct a premature appraisal." (Williams Aff. ¶ 3, Ex. 4 at 6.) Under the Policy, State Farm is not required to participate in the appraisal process until Darmer has reasonably complied with its requests for information. The Court concludes that the issue of waiver cannot be resolved while a genuine issue of material fact remains with respect to whether Darmer has complied with his "duties after loss."

Because a genuine issue of material fact remains with respect to whether Darmer has reasonably complied with his "duties after loss," the Court will deny Darmer's Motion to Compel Appraisal.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, Darmer's objections to the Report and Recommendation [Docket No. 35] are **OVERRULED** and the Magistrate Judge's Report and Recommendation [Docket No. 34] is **ADOPTED in**

**full**.  Accordingly, **IT IS HEREBY ORDERED** that Darmer's Motion to Compel Appraisal [Docket No. 10] is **DENIED**.

DATED: July 6, 2018                        _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                                Chief Judge
                                                      United States District Court