UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Steven Darmer, | Case No. 17-cv-4309-JRT-KMM |
| Plaintiff, | |
| vs. | ORDER ON MOTION TO AMEND COMPLANIT AND MODIFY SCHEDULING ORDER |
| State Farm Fire and Casualty Company, | |
| Defendant. | |

This matter is before the Court on Steven Darmer's motion to amend his complaint. Pl.'s Mot. to Am. Compl., ECF No. 62. Mr. Darmer seeks leave to include: (1) additional allegations he claims are relevant to his breach-of-contract claim; and (2) a new claim for bad-faith denial of insurance benefits pursuant to Minn. Stat. § 604.18. Also before the Court is Mr. Darmer's request for modification of the scheduling order. Pl.'s Mot. to Am. Scheduling Order, ECF No. 116. For the reasons that follow, Mr. Darmer's motion to amend the complaint is granted and the scheduling order is modified.

I.   Motion to Amend Complaint

The parties disagree about two main issues with respect to Mr. Darmer's request to amend to include a bad-faith claim.[1] First, the parties disagree whether Mr. Darmer's motion to add that claim is governed by Federal Rule of

---

[1] Because there does not appear to be any dispute with respect to Mr. Darmer's request to add allegations to his pleadings that relate to his breach-of-contract claim, the Court grants the motion to the extent it seeks such relief without further discussion.

1

Civil Procedure 15 or by Minn. Stat. § 604.18, subd. 4. Second, the parties dispute whether amendment should be permitted under either standard.

### A. Applicable Standard

Rule 15(a)(2) and Minn. Stat. § 604.18, subd. 4(a), set out different standards for a court to apply when considering whether to allow a plaintiff to add a claim to recover "taxable costs" based on an insurance company's alleged bad-faith denial of benefits. Under Rule 15, leave to amend should be freely granted when justice requires. Fed. R. Civ. P. 15(a)(2). Federal courts applying this standard deny leave to amend where there is undue delay, bad faith or dilatory motive on the part of the plaintiff, repeated failure to cure deficiencies by amendments previously permitted, or where the amendment would cause undue prejudice to the defendant. *Foman v. Davis*, 371 U.S. 178, 182 (1962) Leave may also be denied where the proposed amendment is futile, meaning that the allegations in the proposed amended pleading are insufficient to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Courts evaluating futility do not consider matters outside the proposed amended pleading in deciding whether to permit the amendment. *Arias v. Am. Family Mut. Ins. Co.*, No. 13-cv-1681 (PJS/JJG), 2013 WL 12145854, at *1 (D. Minn. Oct. 28, 2013) ("No matters outside the pleading may be considered.") (quoting *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir. 2002)).

The standards established by the Minnesota Legislature governing amendment of complaints under Minn. Stat. § 604.18, subd. 4(a), are different. This statute prevents a plaintiff from bringing a claim for bad-faith denial of insurance benefits at the beginning of a "civil action by an insured against an insurer." *Id.* Instead, "[a]fter filing the suit," the plaintiff is allowed to "make a motion to amend the pleadings to claim recovery of taxable costs under this section." *Id.* Such a motion "must be accompanied by one or more affidavits showing the factual basis for the motion" and the insurer may submit evidence

to show that there is no factual basis for the motion. *Id.* The court may grant the plaintiff leave to amend "if the court finds prima facie evidence in support of the motion." *Id.*

For several years in the District of Minnesota, the standards laid out in Minn. Stat. § 604.18, subd. 4(a), have been applied to motions seeking leave to add a bad-faith-denial-of-benefits claims in diversity-jurisdiction cases like this one. *See, e.g., Friedberg v. Chubb and Son, Inc.*, 800 F. Supp. 2d 1020, 1024–30 (D. Minn. 2011). Recently, however, the propriety of applying the Minnesota gatekeeping standard, as opposed to Fed. R. Civ. P. 15, has come into question. In *Selective Insurance Co. of South Carolina v. Sela*, No. 16-cv-4077 (PJS/SER), 2018 WL 1960450, *5–13 (D. Minn. Apr. 26, 2018), the court directly addressed "what legal standard controls amendments to the pleadings in a diversity case[.]" *Id.* at *2. The *Sela* court concluded that Rule 15(a)(2)'s standards must be applied because Rule 15's are in direct conflict with the standard applied under Minn. Stat. § 604.18, subd. 4(a). Specifically, the court concluded that the Minnesota statute requires a party seeking leave to amend to shoulder a more difficult burden than required under the Federal Rule.[2] *See id.*, 2018 WL 1960450, at *7 (noting that § 604.18 requires an evidentiary showing where the Rules of Civil Procedure focus the court's inquiry on only the facial plausibility of the pleading itself); *id.* at *8 ("[S]ection 604.18 requires a greater

---

[2] United States Magistrate Judge Steven E. Rau's decision in *Sela* was appealed to United State District Judge Patrick J. Schiltz. At the time of this Order, Judge Schiltz has not ruled on the objections to Judge Rau's order. In another recent case, the District Court overruled an objection to Magistrate Judge Rau's conclusion that federal courts in diversity cases must apply Rule 15 to motions to amend complaints to add punitive damages rather than Minn. Stat. § 549.191, which followed reasoning similar to the decision in *Sela*. *Urbieta v. Mentor Corporation*, No. 13-cv-1927 (ADM/LIB), 2018 WL 3475484 (D. Minn. Jul. 19. 2018) (Montgomery, J.) (overruling defendant's objection to magistrate judge order granting leave to amend to add a claim for punitive damages by applying Rule 15 instead of Minn. Stat. § 549.191).

showing than the standard contemplated by the Federal Rules of Civil Procedure.").

This Court agrees with and adopts the reasoning in *Sela*. The *Sela* court carefully analyzed the Supreme Court precedent that must guide the determination of whether to apply a state rule or a Federal Rule of Civil Procedure that appear to be in conflict. *See id.* at *2–3 (discussing *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), *Burlington N. R.R. v. Woods*, 480 U.S. 1 (1987), and *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)). In addition, the *Sela* court cogently explained how a futility analysis under Rule 15 requires a court to accept as true the allegations in a proposed amended pleading, while avoiding consideration of matters outside the pleadings. *Id.* at *5–6. This conflicts directly with the prima facie evidentiary showing that a moving party must marshal under § 604.18 and the consideration a court must give to evidence submitted in opposition to the motion. *Id.* at *6–8. Rule 15 provides a uniform answer to the question of when leave to amend should be permitted in federal litigation and its liberal standard cannot peacefully coexist with the more difficult one created by § 604.18. *Id.* at *8–9, 11. Moreover, Rule 15 is valid under the Rules Enabling Act for all the reasons noted in the *Sela*. *Id.* at *12–13. Accordingly, the Court concludes that Rule 15's standards must be applied to Mr. Darmer's motion for leave to add a bad-faith-denial-of-benefits claim.[3]

### B. Futility Analysis

In light of the lenient amendment standard contemplated by Rule 15, the Court must determine whether Mr. Darmer's motion should be denied because

---

[3] State Farm notes that in *Borchardt v. State Farm Cas. Co.*, No. 16-cv-55 (PJS/KMM), 2017 WL 8315883 (D. Minn. Apr. 26, 2017), the undersigned applied the "stricter standard in § 604.18." Defs.' Resp. at 28, ECF No. 102. Neither party in *Borchardt* suggested that Rule 15's standards should apply to the motion to amend to add a claim under § 604.18.

amendment would be futile.[4] Although the Court remains quite skeptical of whether a finder-of-fact would ever conclude that State Farm acted in bad faith based on the full record, the Court concludes that amendment would not be futile and should therefore be permitted.[5]

Plausibility is a concept applicable to motions to dismiss for failure to state a claim under Rule 12(b)(6), see *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007), which is the same standard courts consider when evaluating futility of amendment, *Zutz*, 601 F.3d at 850. Construing State Farm's position to be that leave to amend should be denied because Mr. Darmer's claim is futile, Court will evaluate whether the factual allegations in the Proposed Second Amended Complaint could survive a motion to dismiss for failure to state a claim for recovery of "taxable costs" under Minn. Stat. § 604.18.

Section 604.18 allows an insured to recover "taxable costs" from an insurer where the insured can show:

(1) the absence of a reasonable basis for denying the benefits of the insurance policy; and

(2) that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless

---

[4] State Farm has not suggested that Mr. Darmer's motion should be denied for undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, or undue prejudice. Therefore, the Court will not address these issues.

[5] State Farm's opposition to Mr. Darmer's motion to amend is largely premised upon the factual record in this case, pointing to several matters beyond the pleadings. *See* Defs.' Resp. at 3–25 (referencing affidavits and several exhibits). As such, State Farm's opposition to the motion does not focus on the allegations in Mr. Darmer's Proposed Second Amended Complaint. Nevertheless, State Farm argues that the facts demonstrate that Mr. Darmer's proposed bad-faith claim is not "plausible," which signals a futility challenge to Mr. Darmer's motion to amend. Defs.' Resp. at 29.

> disregard of the lack of a reasonable basis for denying the benefits of the insurance policy.

Minn. Stat. § 604.18, subd. 2(a).[6] Courts looking to this statutory language have held that the insurer is not liable for such "taxable costs" where the insured's claim is "fairly debatable." *See Friedberg*, 800 F. Supp. 2d at 1025.

With these standards in mind, the Court must consider whether the allegations set forth in the proposed Second Amended Complaint plausibly allege that State Farm failed to comply with its contractual obligations in an unreasonable manner and did so knowing (or recklessly disregarding) that it had no reasonable basis to deny the benefits of the insurance policy. *See Sela*, 2018 WL 1960450, at *14–15. Looking only at the allegations, *see* Redlined Proposed Second Am. Compl. ("SAC"), ECF No. 99, and taking the facts alleged as true, the Court finds that Mr. Darmer has plausibly alleged a claim for bad-faith denial of insurance benefits.

Mr. Darmer asserts that State Farm should be held liable under Minn. Stat. § 604.18 in three respects. First, he alleges that State Farm unreasonably delayed paying benefits for the loss of his home itself. Taken together, his factual allegations plausibly allege that State Farm knew his home was damaged in the November 15, 2016 fire to such an extent that it was either a total loss or a constructive total loss under his policy. State Farm's representatives allegedly knew that the City of St. Paul declared the property a total loss and issued an order for abatement of the property shortly after the fire. State Farm's internal correspondence on the day of the fire noted that entire portions of the structure were destroyed. A State Farm representative was aware that the City intended to tear down what was left of the home within weeks. A State Farm

---

[6] A showing under subdivision 2 of § 604.18 allows a court to award "(1) an amount equal to one-half of the proceeds awarded that are in excess of an amount offered by the insurer at least ten days before the trial begins or $250,000, whichever is less; and (2) reasonable attorney fees actually incurred to establish the insurer's violation of this section." Minn. Stat. § 604.18, subd. 3.

representative estimated that the cost of repairing or replacing the home exceeded the policy limits. However, according to Mr. Darmer's proposed SAC, State Farm did not make full payment for the replacement of his home until September 1, 2017.

Second, Mr. Darmer asserts that State Farm unreasonably refused to pay for the contents of his home despite knowing or recklessly disregarding that it had no reasonable basis to refuse payment. Again, Mr. Darmer has plausibly alleged a bad-faith claim. According to the facts set forth in the proposed SAC, Mr. Darmer provided State Farm with the information required under the policy to value the contents of his home that were lost in the fire. When State Farm's representatives entered the items that Mr. Darmer said were damaged into its own system for evaluating a contents claim, he alleges that the replacement costs and valuations for the entries that State Farm verified far exceeded the policy limits for this coverage. Despite being aware that even the verified items exceeded the policy limits, State Farm allegedly delayed payment of benefits. Mr. Darmer asserts that State Farm unreasonably demanded further information and then rejected his proof of loss claiming it needed additional documentation. Finally, according to Mr. Darmer's SAC, State Farm ultimately never paid its policy limits for the contents of his home.

Third, Mr. Darmer claims that State Farm was unreasonable in its decision to cancel alternative living expense payments before his new residence was fully constructed. Mr. Darmer asserts that the policy entitles him to payment of such expenses for up to two years so that he has the same living conditions he enjoyed before the fire. State Farm paid some alternative living expenses for a period after the fire, but it terminated the payments in October of 2017. State Farm allegedly canceled these payments because it recklessly disregarded that construction could not begin until State Farm paid the policy limits to replace the dwelling, which did not occur until September of 2017. He asserts that when he asked State Farm to reinstate the expenses, it refused, unreasonably

determining that he was only entitled to a lesser standard of living that was not actually comparable to his pre-fire experience.

In sum, the Court founds that, taking Mr. Darmer's allegations as true and applying the liberal amendment standard contemplated by Rule 15, Mr. Darmer's motion to amend should be granted.

### C. A Word of Caution

As explained, on a futility challenge, the Court determines only whether Mr. Darmer's bad-faith claim is plausible, and assumes all of the facts alleged in his proposed SAC to be true. When evaluating his position going forward in this case, Mr. Darmer should be aware of just how permissive the standard applied by the Court is. Mr. Darmer is cautioned that a fact-finder evaluating a complete record could easily conclude Mr. Darmer's insurance claims were, at a minimum, fairly debatable, and therefore his bad-faith claim would not succeed. For example, if the Court looks beyond Mr. Darmer's one-sided view of the facts, the record suggests that State Farm may, in fact, have reasonably delayed paying the policy limits for the dwelling because it did not receive a signed repair contract until the end of August 2017. The record also suggests that Mr. Darmer may have repeatedly and substantially misrepresented the value of the contents he lost during the fire, which certainly calls into question Darmer's argument that State Farm was not entitled to debate his claim for policy limits regarding the contents of the home. Moreover, Mr. Darmer's own emails also indicate that he instructed his public adjuster not to cooperate with State Farm's claims adjuster, which would indicate that State Farm was entitled to closely examine and question his contents claim, essentially eliminating a bad-faith finding. And State Farm has presented facts outside the proposed SAC that indicate it was fairly debatable whether Mr. Darmer's alternative-living-expenses claim required the insurer to accommodate the precise demands Darmer made. In light of its decision to apply Rule 15, the Court has not taken these extra-pleading materials into account. Nevertheless, the Court notes these

matters here to highlight that although Mr. Darmer is being given leave to amend to allege a bad-faith claim, he should not read this decision as implying that he is likely to succeed.[7]

Based on the foregoing, **IT IS HEREBY ORDERED THAT** Mr. Darmer's motion for leave to file a Second Amended Complaint **(ECF No. 62)** is **GRANTED. On or before November 26, 2018,** Mr. Darmer shall file his Second Amended Complaint in substantially the same form as the (non-redlined) proposed Second Amended Complaint submitted in connection with his motion.

## II. Motion to Modify the Scheduling Order

This matter is also before the Court on Mr. Darmer's request for modification of the schedule. Pls.' Consolidated Mots., ECF No. 116. As noted in the Court's October 5, 2018 Order, the Court deferred ruling on this request until a decision was reached on the motion to amend. Order (Oct. 5, 2018), ECF No. 218. State Farm represented at the October 3rd hearing that its production of documents and other discovery responses were not significantly limited by its objection that there was no bad-faith claim in the litigation at that time. The

---

[7] In opposing the motion to amend, State Farm argues that the motion should be denied because Mr. Darmer's bad-faith claim would not survive summary judgment. Def.'s Resp. at 33–34. Indeed, were that the standard at this stage, the Court's ruling might be different. However, courts must apply the Rule 12(b)(6) standard when considering whether a proposed amendment is futile, a review that ignores matters outside the pleadings. To the extent federal district courts may convert a futility challenge into a motion for summary judgment, the Court declines to do so here. *See Hebert v. Winona Cty.*, No. 15-cv-469 (RHK/JJK), 2016 WL 7888036, at *5 (D. Minn. Apr. 7, 2016) (refusing to consider matters outside the pleadings on a futility challenge to a motion to amend and declining to convert the challenge to a motion for summary judgment); *Ketchum v. St. Cloud Hosp.*, No. 12-CV-2893 (RHK/LIB), 2013 WL 12140953, at *3 n.3 (D. Minn. May 30, 2013) (declining to convert a futility challenge to a motion for summary judgment).

Court advised the parties that, if the Court grants the motion to amend to add a bad-faith claim, which it has done in this Order, the Court would permit a very brief extension of the schedule to allow narrowly tailored discovery on the bad-faith claim. The Court also allowed Mr. Darmer to serve 5 additional document requests and 5 additional interrogatories relating to the then-putative bad-faith claim. Plaintiff's counsel did not articulate a basis for the Court to determine that earlier depositions would need to be reopened even if the bad-faith claim was permitted. ECF No. 218.

Because the Court has granted Mr. Darmer's motion to amend, Mr. Darmer's request for modification of the schedule **(ECF No. 116)** is **GRANTED IN PART** to the extent it seeks a modest extension of the remaining deadlines. **IT IS HEREBY ORDERED THAT:**

1. The parties may conduct limited discovery concerning the bad-faith claim allowed by Part I of this Order. Any such discovery must be served in time to be completed by **January 21, 2019**. No additional depositions will be allowed absent leave of the Court.

2. If any disputes arise with respect to the limited discovery permitted by this Order, the parties are required to engage in a meet-and-confer process that includes at least one in-person meeting or personal phone conversation. If the parties are unable to work out any such disputes, those issues must be raised through the Court's informal discovery dispute resolution process.

3. All dispositive motions shall be served and filed by the moving party on or before **April 1, 2019**.

4. This case shall be ready for a **jury** trial on **July 1, 2019**.

Date: November 21, 2018          *s/Katherine Menendez*
                                 Katherine Menendez
                                 United States Magistrate Judge