## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Steven Darmer,                                      Case No. 17-cv-4309-JRT-KMM

                    Plaintiff,

vs.                                                **ORDER AND**
                                                   **REPORT AND**
State Farm Fire and Casualty Company,              **RECOMMENDATION**

                    Defendant.

        This matter is before the Court on State Farm Fire and Casualty Company's Motion for
Sanctions Under Fed. R. Civ. P. 37(b) and the Court's Inherent Power. [Def.'s Mot., ECF
No. 233.] In support of its motion, State Farm asserts that during discovery Mr. Darmer failed to
produce highly relevant documents that undermine his claims. State Farm seeks a variety of
sanctions. [Defs.' Mem. at 44–48, ECF No. 235; Defs.' Proposed Order, ECF No. 238.] The
Court held a hearing on State Farm's motion on June 11, 2019. As explained below, State Farm's
motion is granted in part, and the Court recommends that the District Court permit cross
examination concerning Mr. Darmer's discovery misconduct.

## I.    Background

        Mr. Darmer's St. Paul home was damaged in a fire on November 15, 2016. State Farm
insured the home. Mr. Darmer submitted a claim to State Farm and hired a public adjuster, Troy
Brown, to assist him in resolving the claim with the insurer. Mr. Darmer asserted that he was
entitled to substantial benefits from State Farm under the relevant policies. He asked State Farm
to pay the policy limits in replacement costs for the dwelling, and to reimburse for the contents
of the home that were lost in the fire and alternative living expenses while his home was being
rebuilt. Mr. Darmer alleges that State Farm breached its obligations by failing to pay the full
amount of benefits to which he was entitled.

### A.  Original and Amended Repair Contracts

        Approximately nine months after the fire, on August 23, 2017, Mr. Darmer entered a
"Work Authorization & Contractual Agreement" (the "Original Repair Contract") to have his
home rebuilt by Ultimate Restoration, Inc. ("URI"). [Sixth Williams Aff., Ex. 3, ECF No. 237.]

The Original Repair Contract with URI estimated the cost of rebuilding the home at $954,385.05. [*Id.*] The Original Repair Contract was accompanied by an Original Repair Estimate reflecting the same rebuilding costs. [ECF No. 92-1.] However, on the same day that the Original Repair Contract and Estimate were fully executed, Mr. Darmer signed an "Amendment to Contract," which established a "[n]ew contract amount … for new rebuild building for $519,135.09." [Sixth Williams Aff., Ex. 5.] Chris Kosek executed both versions of the contract on behalf of URI. [*Id.*; *id.*, Ex. 3.] An "Amended Repair Estimate" corresponds to the Amendment to Contract and reflects the lower contract amount of approximately $520,000. [Sixth Williams Aff., Ex. 7.] On August 26, 2017, Darmer's public adjuster, Mr. Brown, submitted the Original Repair Contract to State Farm in connection with his claim, representing that it governed the repair work being done. [*Id.*, Ex. 3.] Mr. Brown did not send State Farm the Amendment to Contract or Amended Repair Estimate.[1] State Farm was unaware of the amended contract documents until the discovery process in this litigation.

### *Early Document Production*

Mr. Darmer filed this case in September of 2017. In December 2017, State Farm served Mr. Darmer with requests for production of documents under Fed. R. Civ. P. 34. [Sixth Williams Aff., Ex. 51.] One of those requests asked for production of "[a]ll documents … relating to … any construction, renovation, improvement alteration, repair, restoration, destruction, replacement, … or other services … performed or provided at any time (before or after the fire) for the dwelling…." [*Id.* (Request No. 7).] In his written responses, Mr. Darmer never referenced the amended contract documents. [Sixth Williams Aff., Ex. 52 (response to Request No. 7).]

On February 1, 2018, Mr. Darmer produced a flash drive including thousands of pages of documents with no Bates labeling. [Aff. of Scott Williams ("First Williams Aff.") ¶¶ 3–4, ECF No. 198.] There is no evidence that this flash drive contained a copy of the Amendment to Contract or the Amended Repair Estimate, which reflect the lower contract price between Mr. Darmer and URI.

In early 2018, the Court ordered Mr. Darmer to submit to an examination under oath ("EUO") in connection with his insurance claim. [ECF No. 42 (establishing a two-part EUO to take place on 4/20/2018 and 4/28/2018).] Just before the EUO was set to take place, State Farm advised the Court that Mr. Darmer had produced a large amount of electronically stored

---

[1]    Mr. Brown never saw the amended contractual documents until State Farm took his deposition a second time in May of 2019 in this case. [Sixth Williams Aff., Ex. 6.]

information ("ESI") on a second flash drive (the "April flash drive") containing "over 20,000 files with no Bates labels or any other apparent organization." [*See* Order (Apr. 19, 2018), ECF No. 45.] The April flash drive also included irrelevant information, supporting State Farm's position that no attempt had been made by Mr. Darmer or his counsel, Edward Beckmann, to provide State Farm with responsive information. [First Williams Aff. ¶¶ 10–11.]

In September 2018, the Court informed the parties that certain discovery issues they flagged needed to be addressed through formal motion practice, rather than the Court's informal dispute resolution process. [Mins. (Sept. 10, 2018), ECF No. 112.] State Farm filed a motion to compel, arguing in relevant part that much of the ESI Mr. Darmer produced in the February and April flash drives was unusable because it lacked all organization. [Def. Mem. in Supp. of Mot. to Compel ("MTC Mem."), ECF No. 197.] The Court found that Mr. Darmer's production of documents was "a massive dump of data with little or no effort to ensure that the information provided to State Farm was responsive to State Farm's requests." [Order (Oct. 5, 2018) at 3, ECF No. 218.] The Court ordered Mr. Darmer to "make reasonable efforts to improve the state of his document production"; required him to review the documents produced for relevance and responsiveness; directed him to determine which documents could properly be designated as confidential; and instructed him to provide documents with some organization. [*Id.* at 3.] Essentially, this Order alleviated State Farm of having to engage in the laborious task of sifting through the haphazard data dump on both flash drvies and required Mr. Darmer and Mr. Beckmann to take on the ordinary responsibility of making a reasonable document production.

### *November 2018*

On November 1, 2018, State Farm took Mr. Kosek's deposition. [Sixth Williams Aff., Ex. 4.] Mr. Kosek testified about an "addendum" to the Original Repair Contract, but he had not yet produced any documents at the time he was deposed. [*Id.*; *see also id.*, Ex. 1 (summary describing Exhibit 32).] State Farm received URI's document production on November 20, 2018, for the first time revealing a copy of the Amendment to Contract with the $520,000 amount. That same day, Mr. Darmer supplemented his document production as ordered by the Court on October 5th. [Sixth Williams Aff. ¶ 3.] There is no indication that the November 2018 production included the Amendment to Contract or the Amended Repair Estimate.

*Subsequent Developments*

State Farm took Mr. Darmer's deposition on March 1, 2019. Mr. Darmer admitted that he signed the Amendment to Contract on August 23, 2017. [Sixth Williams Aff., Ex. 10 (Dep. at p. 17–18).] Mr. Darmer claimed that he could not remember whether the Amendment to Contract or Amended Repair Estimate had ever been provided to State Farm. [*Id.*, Ex. 10 (Dep. at p. 18–19).]

Because State Farm had already taken the depositions of Mr. Kosek and Mr. Brown prior to receiving a copy of the Amendment to Contract and the Amended Repair Estimate, State Farm reasonably insisted that it be permitted to take those depositions again. [Sixth Williams Aff., Ex. 11; *see also id.*, Ex. 1 (Executive Summary of Ex. 11).] Mr. Brown's second deposition was taken on May 16, 2019. Mr. Kosek's second deposition was rescheduled several times, and eventually took place on May 31, 2019.

### B. Undisclosed Emails

State Farm's motion for sanctions also addresses Mr. Darmer's failure to produce copies of certain email communications he exchanged with Mr. Brown. In its initial discovery requests in December 2017, State Farm asked Mr. Darmer to produce "[a]ll … communications relating to services performed at any time by public adjuster(s) with regard to Plaintiff's property and/or Plaintiff's claims arising out of the November 2016 fire…." [Sixth Williams Aff., Ex. 51 (Request No. 8).] In response, Mr. Darmer generally referenced documents which had been separately produced by Mr. Brown's company, DTL Global. [*Id.* (response to Request No. 8).] However, as noted above, the February and April flash drives amounted to an unusable ESI data dump, and Mr. Darmer was later explicitly ordered to improve the state of his production.

State Farm also served a subpoena on DTL Global, Mr. Brown's company, in December of 2017. In response to that subpoena, Mr. Brown produced an array of documents, including several emails between Mr. Brown and Mr. Darmer. [First Williams Aff. ¶¶ 6–8 & Exs. C, D.] The following list describes the twelve emails received from Mr. Brown that are at issue:

1. Answers to JJJ Letter;
2. Appraiser Ben Johnson Retainer Agreement;
3. Change in Blue;
4. JJJ Response to Letter 4-10-17;
5. Letter;
6. Letters from State Farm;
7. Letters to Ryan and Jene;

8. More dates;
9. Preliminary Appraisal Letter;
10. Structural Claim Estimate;
11. Updated response to JJJ; and
12. JJJ Letter.

[*See* Sixth Williams Aff., Ex. 13.] To put it mildly, some of these emails are damaging to Mr. Darmer's case. In one message, Mr. Darmer advises Mr. Brown not to cooperate with State Farm's claims investigation. Another message undermines his claim that the property was a total loss because it demonstrates that Mr. Darmer was aware that St. Paul personnel agreed as early as the date of the fire that the house could be saved.

When State Farm filed its motion to compel in September of 2018, it noted that DTL's document production included a number of emails between Mr. Brown and Mr. Darmer that State Farm had not received from Mr. Darmer in response to its discovery requests. [MTC Mem. at 2.] However, when State Farm received Mr. Darmer's November 2018 production, the twelve emails described above were still not among the documents that Mr. Darmer produced.

## C. Discussions Regarding Production Deficiencies

State Farm's counsel raised concerns regarding Mr. Darmer's document production with Mr. Beckmann repeatedly after it received the November 2018 production in response to the motion to compel. State Farm sought an explanation for why the Amendment to Contract, Amended Repair Estimate, and the twelve emails received from DTL were not produced. As detailed in State Farm's memorandum in support of its motion for sanctions, its efforts to obtain an explanation for these critical omissions were met with periods of silence interspersed with shifting explanations. [Def.'s Mem. in Supp. of Mot. for Sanctions ("Sanctions Mem.") at 16–25, ECF No. 235.] The following summarizes these exchanges.

State Farm reached out to Mr. Beckmann three separate times in January and February 2019, seeking some explanation for why the twelve emails received from DTL were not in Mr. Darmer's November 2018 document production. Mr. Beckmann finally responded in late February 2019, but his response did not directly address the issues State Farm raised. State Farm's counsel also raised issues concerning the failure to produce the amended contract documents in March 2019. In April 2019, State Farm finally received a substantive response regarding its concerns. Mr. Beckmann's April 15th letter essentially indicated that emails were not previously produced because Mr. Darmer is not proficient at using his web-based email account, but the letter did not specifically address the failure to produce the amended contract

5

documents. [Sixth Williams Aff., Ex. 19.] Mr. Darmer eventually produced the Amendment to Contract and Amended Repair Estimate in a supplemental April 2019 production following a more thorough search of his computer. There was also some suggestion that particular emails had been "trashed by mistake" by Mr. Darmer. [*Id.*, Ex. 20.]

State Farm was unsatisfied by Mr. Beckmann's explanations as well as Mr. Darmer's assertion that he produced documents in good faith and that State Farm suffered no prejudice. [Sixth Williams Aff., Exs. 23–24.] Mr. Beckmann responded by asserting that Mr. Darmer was "quite sure" the emails and the amended contract "were produced with his flash drive," though he failed to specify to which of the two flash drives he was referring.[2] This explanation also contradicted Mr. Darmer's earlier assertions that the amended contract documents had only recently become available to Mr. Darmer when he requested them from URI. [*Id.*, Ex. 25; *see also id.*, Ex. 29.] Later, Mr. Beckmann attempted to explain that the emails originally received from the DTL Global subpoena had essentially been produced by Mr. Darmer because Mr. Brown was his agent for discovery purposes. [*Id.*, Ex. 26.]

On May 29, 2019, Mr. Beckmann produced a Microsoft Xcel spreadsheet he described as a "map" for where State Farm could locate certain missing emails on the flash drive he produced in April 2018. [Sixth Williams Aff., Ex. 55.] Three of the twelve missing emails were not referenced in this spreadsheet. [Sanctions Mem. at 22–23 n.23.] The spreadsheet also did not reveal where the documents could be located in the November 2018 production that Mr. Darmer made in response to the Court's October 5, 2018 Order on State Farm's motion to compel. [Sixth Williams Aff., Ex. 55.] Ultimately, although Mr. Darmer suggested that State Farm's sanctions motion misrepresented that the twelve emails between himself and Mr. Brown were missing from the November 2018 document production, he has since conceded that State Farm was correct on this point. [Letter from Beckmann, E., to the Court (Aug. 1, 2019), ECF No. 316.] And it appears that three of these critical emails were never produced at any time by Mr. Darmer despite their clear relevance.

## II.    Discussion

State Farm asserts that Mr. Darmer engaged in conduct that abused the discovery process. State Farm asks the Court to impose the following sanctions pursuant to Federal Rule of Civil Procedure 37 and its inherent power: (1) taking various matters as established for purposes of the litigation; (2) striking certain allegations from his Second Amended Complaint and striking

---

[2]    The November 2018 production had been produced on a CD.

certain documents from the record; (3) adopting certain adverse-inference instructions regarding Mr. Darmer's discovery conduct; (4) requiring Mr. Darmer to pay for State Farm to conduct a forensic examination of his computers; and (5) requiring Mr. Darmer to pay State Farm's reasonable expenses and fees incurred in revealing and addressing discovery misconduct. [Defs.' Mem. at 44–48, ECF No. 235; Defs.' Proposed Order, ECF No. 238.] The Court concludes that reasonable and just sanctions against Mr. Darmer and Mr. Beckmann are warranted, including: requiring payment of State Farm's reasonable expenses, including attorney's fees, incurred in taking the second depositions of Mr. Brown and Mr. Kosek; and requiring payment of State Farm's reasonable expenses and fees incurred in bringing the motion for sanctions. The Court explains below why the additional sanctions State Farm seeks are not warranted in this case.

### A. Rule 37

State Farm's primary basis for requesting discovery sanctions against Mr. Darmer is Federal Rule of Civil Procedure 37. In relevant part, Rule 37 provides:

> If a party … fails to obey an order to provide or permit discovery … the court … may issue further just orders. They may include the following.
>
> (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    prohibiting the disobedient from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)   striking pleadings in whole or in part
>
> (iv)   staying further proceedings until the order is obeyed;
>
> (v)    dismissing the action or proceeding in whole or in part;
>
> (vi)   rendering a default judgment against the disobedient party; or
>
> (vii)  treating as contempt of court the failure to obey any order except to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). Further, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

### 1.  Darmer Violated the October 5, 2018 Order

The discovery order at issue is the Court's October 5, 2018 Order, which granted in part and denied in part State Farm's motion to compel discovery. State Farm argues that Mr. Darmer disobeyed the October Order because his failure to produce the twelve emails and the amended contract documents did not constitute an "improvement" of his earlier document production and, in fact, made things worse. [Sanctions Mem. at 36.] State Farm further argues that Darmer's unreasonable withholding of these documents ran afoul of two other requirements in the Order— that he review the documents produced and identify which ones were relevant to specific requests and take steps to remove irrelevant documents from his production. [*Id.* at 35.] Mr. Darmer argues that he complied with the October Order because it only required him to organize his production, "but did not specify how," thus suggesting that he was not required to produce the emails or the amended contract documents at issue. [Pl. Resp. at 11, ECF No. 254.] He also contends that State Farm's subsequent objection to the November 2018 production raised no complaint about the organization required by the Court; instead State Farm's focus apparently shifted to the missing emails. [*Id.*]

For the following reasons, the Court concludes that Mr. Darmer violated the October discovery Order.[3] In that Order, the Court required Mr. Darmer to: (1) "make reasonable efforts to improve the state of his document production"; (2) "review the documents produced to identify which documents are relevant and responsive to which of State Farm's document requests"; (3) "remove documents from his production that have no relevance to this litigation"; (4) "reasonably review the relevant documents in his production and determine which of those documents may properly be designated as confidential"; and (5) "[organize] the documents … in some clear order so that the above requirements can be accomplished." [ECF No. 218 at 3.] Implicit in the Court's Order were two additional determinations. First, the flash-drive productions Mr. Darmer made in February and April 2018 were essentially nullities; they were

---

[3]    The Court notes that State Farm cites *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494 (D. Md. 2000), in support of its argument that sanctions are warranted under Rule 37(b)(2). The conduct at issue in this case and that in *Poole* share many characteristics, but the *Poole* court did not impose any sanctions under Rule 37(b)(2). 192 F.R.D. at 497–99 (discussing the availability of sanctions under the court's inherent power, Rule 37(a), and Rule 26(g)). Indeed, the *Poole* court found that the defendant "has not directly violated a court order." *Id.* at 506. *Poole* is of limited value to the Rule 37(b)(2) analysis.

so unusable that it was as if he made no document production at all.[4] And second, when Darmer culled irrelevant information and reviewed the information on the flash drives for relevance and responsiveness, his eventual document production needed to be full and complete.

Mr. Darmer's production in November 2018 illustrates that he and Mr. Beckmann failed to adhere to these requirements in several respects. First, the handling of the Brown/Darmer emails runs afoul of the requirements of: (1) a reasonable review of the original production to ensure the documents produced were responsive to specific request; and (2) only removing irrelevant information from the original production. There is no question that none of the twelve Brown/Darmer emails were included in the November 2018 production. Had Mr. Darmer and Mr. Beckmann complied in good faith with the requirement to reasonably review the relevant documents in the original production for responsiveness, they would have discovered that three of the Brown/Darmer emails were missing from the original production. Had they complied with the instruction to remove only irrelevant information from the production, the nine other Brown/Darmer emails would not have been removed when the November 2018 production was made.

Second, with respect to the amended contract documents, Mr. Darmer and Mr. Beckmann's review of the original production should have revealed that the Amendment to Contract and Amended Repair Estimate had not been provided. The failure to disclose these amended contract documents in the November 2018 production violated the October Order's implicit requirement that the subsequent production needed to be full and complete.

Mr. Darmer's arguments essentially suggest that because none of the October Orders' explicit requirements insisted on production of the Brown/Darmer emails or the amended contract documents, his subsequent failure to produce any of those items in November 2018 did not violate the Order. This reading of the discovery Order is unreasonable and unduly narrow. It also ignores the necessary implications of the discovery Order that a full and complete production was required. Such conduct justifies an imposition of sanctions. *See Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1028, 1213 (8th Cir. 1981) (affirming the district court's imposition of sanctions under Rule 37(b)(2) where it found its order on a motion to compel "carried with it the implicit condition to answer fully and completely").

---

[4]    The Court denied State Farm's motion only to the extent defendants asked for Bates labeling of every document in the massive data dump Mr. Darmer provided in February and April of 2018. Doing so would have been a wasteful enterprise given that the production Darmer had made at that point was essentially worthless and needed to be completely reworked.

### B.  Inherent Power

The discovery conduct in this case also warrants sanctions under the Court's inherent power even if the October Order's provisions had not been violated. Federal courts have the inherent power to manage litigation before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991) (discussing courts' inherent powers to "manage their own affairs to achieve the orderly and expeditions disposition of cases"); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). In exercising that power, courts may impose sanctions ranging from the most severe—dismissal—to less severe "assement[s] of attorney's fees." *Id.* at 44–45. Other available sanctions include exclusion of evidence or testimony and imposition of an adverse inference instruction to the jury. *See Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266–69 (8th Cir. 1993); *Stevenson v. Union P. R. R. Co.*, 354 F.3d 739, 746–50 (8th Cir. 2004). Courts are required to exercise their inherent powers "with restraint and discretion." *Chambers*, 501 U.S. at 44.

The discovery misconduct and mismanagement by Mr. Darmer and Mr. Beckmann in this matter is significant, persistent, and troubling. In particular, the Court finds that the failure to disclose the Amendment to Contract and Amended Repair Estimate until after State Farm uncovered their existence through other means and the failure to disclose any of the Brown/Darmer emails in the November 2018 production abused the discovery process and constitutes bad faith. Indeed, the damaging nature of these documents to Mr. Darmer's position in this litigation supports an inference that they were intentionally withheld.

Mr. Darmer attempts to explain his failure to produce the Amendment to Contract as follows:

> If I ever had a copy of the $519,135.09 [Amendment to Contract] from Ultimate Restoration, which I am unsure of, I did not keep a copy which is why I did not produce it. To the best of my recollection I never had a copy of the [Amendment to Contract], which is why I did not produce it.

[Darmer Decl. ¶ 2, ECF No. 258.] He and Mr. Beckmann also attempt to excuse the failure to properly produce all of the Brown/Darmer emails in November 2018 as a result of Mr. Darmer's own lack of technological savvy. Neither of these excuses are credible.

First, with respect to the amended contract documents, although the Court doubts that Mr. Darmer kept a copy of only one of the two contracts he signed on the same day, it is essentially irrelevant whether Mr. Darmer himself had a copy of those items. They were

indisputably under his control for discovery purposes because he could have obtained a copy from URI so that he could fully respond to State Farm's discovery requests. *See Roark v. Credit One Bank, N.A.*, No. 16-cv-173 (RHK/FLN), 2016 WL 11606777, at *3 (D. Minn. Dec. 2, 2016) ("Documents are deemed to be within the possession, custody, or control if the party has the actual possession, custody or control, or has the legal right to obtain the documents on demand…. Courts have sometimes interpreted Rule 34 to require production if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlements to the documents.").

The amended contract documents are abundantly relevant to the claims and defenses in this case, and Mr. Darmer does not suggest otherwise (though he does dispute State Farm's characterization that they support its fraud defense). When Mr. Darmer provided written responses and objections to State Farm's discovery requests, which included a request for contracts concerning or relating to repairs to the property, he did not reference the amended contract documents or otherwise indicate that he was withholding them on the basis of any objection. Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). It was not until after State Farm uncovered the existence of the amended contract documents through its own diligence and pointed out to Mr. Beckmann the apparent effort to conceal the truth that Mr. Darmer even asked URI for a copy of the materials and made a supplemental production. Mr. Darmer does not state that he forgot about the existence of the amended contract documents, and it would be difficult for him to credibly do so given that they were signed the very same day as the Original Repair Contract, which he voluntarily disclosed to State Farm in the claims process and in this litigation. This suggests that Mr. Darmer was able to obtain the amended contract documents all along but chose not to disclose them because they do not necessarily support his claims. Under these circumstances, the Court finds that the failure to produce the Amendment to Contract and the Amended Repair Estimate constitutes bad faith abuse of the discovery process.

Second, the Court finds that the November 2018 failure to disclose the nine Brown/Darmer communications that had been included in the unusable original flash drives also abused the discovery process. The flash drives that Mr. Darmer and Mr. Beckmann originally produced were so unorganized and bloated with irrelevant information that a review would have been prohibitively and disproportionately expensive. This is why the Court took the somewhat unusual step of requiring the plaintiff's side to regenerate an entirely new substitute production when it granted State Farm's motion to compel. There is no excuse for burying unquestionably

relevant and responsive communications in a massive and unusable data dump and then, when the effort was finally made to give the other side something akin to what the rules require, excluding those same emails.

The suggestion that the failure to make complete disclosures in response to State Farm's document requests was due to Mr. Darmer's lack of technological acumen does not excuse what transpired here. In Mr. Beckmann's belated responses to State Farm's inquiries regarding these discovery issues, he attempted to explain the problem as a product of his client's difficulties managing a production from his web-based email program. But this excuse reveals little more than a lack of adequate attorney supervision over the document-collection process. Even if Mr. Darmer could be excused for his lack of technological savvy, Mr. Beckmann is responsible for overseeing his client's collection of documents in response to discovery requests. It is generally unreasonable for an attorney to simply leave the responsibility for document collection and production in response to discovery requests to a client. *See Jones v. Bremen High School Dist.*, 2010 WL 1206640 (N.D. Ill. May 25, 2010) (finding that it was inappropriate for the defendant to have its employees review and make decisions regarding responsiveness and relevance without oversight by counsel); *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 92 (D.N.J. 2006) (finding efforts at collecting documents for production was inadequate when, in part, the defendant left it to company employees "to search and turn over whatever documents they thought were responsive, without verifying that the searches were sufficient"); *see also Nat'l Day Labor Ogranizing Network v. U.S. Immigration and Customs Enforcement Agency*, 877 F. Supp. 2d 87, 108–09 (S.D.N.Y. 2012) (explaining, in a Freedom of Information Act case, the problems with having custodians design and run searches in the e-discovery context). Based on the record before the Court, it does not appear that Mr. Beckmann exercised much oversight of his client's collection of information. Even in Mr. Beckmann's declaration attempting to explain the exclusion of the emails, there is no indication that he directed the collection of Mr. Darmer's ESI. It was unreasonable for Mr. Beckmann to turn over to his client the responsibility for searching through his ESI and that abdication contributed to the discovery failures in this case.[5]

---

[5]    By signing written discovery responses Mr. Beckmann certified they were complete and correct as of the time they were made to best of his "knowledge, information, and belief formed after a reasonable inquiry." Fed. R. Civ. P. 26(g)(1)(A). What Mr. Beckmann's communications to State Farm reveal is that he made no reasonable inquiry as to the completeness or the correctness of his client's document production. This is true not only of the responses accompanying the February and April 2018 flash drive productions, but also the November 2018 CD production. This was a violation of Rule 26(g), and nothing in the record hints at substantial

Finally, the Court is not persuaded by Mr. Darmer's suggestion that he had no obligation to produce the emails in question because he incorporated Mr. Brown's production by reference into his responses to State Farm's discovery requests. The reference to Mr. Brown's production does nothing to explain why the nine Brown/Darmer emails that had produced in the original flash drives were later deleted in November of 2018. Moreover, even if State Farm had access to Brown's copies of the emails, it was entitled to receive all the relevant and responsive communications it asked for from Mr. Darmer, who is a party to this case. By producing some, but not all, of the communications between himself and Mr. Brown, Mr. Darmer undermined State Farm's confidence in the completeness of his production.

## C. Appropriate Sanctions

The Court finds that it is appropriate to impose sanctions for the violations of the October Order and for the discovery abuses discussed above. Specifically, Mr. Darmer's and Mr. Beckmann's conduct in this case caused State Farm to incur significant unnecessary expense. Mr. Darmer's failure to disclose the Amendment to Contract and the Amended Repair Estimate as well as the Brown/Darmer emails caused State Farm to have repeat the depositions of both Mr. Brown and Mr. Kosek. State Farm would not have had to incur the expenses associated with those second depositions were it not for Mr. Darmer's failure to produce those items and Mr. Beckmann's lack of oversight during the discovery process. The appropriate sanction to address those failures is to shift the expenses, including attorney's fees, incurred by State Farm to Mr. Darmer, Mr. Beckmann, or both.

In addition, the Court finds that State Farm should be reimbursed for the expenses incurred in connection with bringing its motion for sanctions. Were it not for Mr. Darmer's discovery abuses and the failure of Mr. Beckmann to adequately address State Farm's concerns, it would have been unnecessary for State Farm to have pursued this motion. These fee-shifting sanctions specifically include the attorney's fees that State Farm incurred, and State Farm counsel must submit a petition for fees and costs in compliance with the schedule set forth below.

However, subject to the discussion below, the Court finds that the other sanctions requested by State Farm are unnecessary at this time. In considering the proposed sanctions, the Court notes that its "discretion is not unlimited and must be balanced against [Mr. Darmer's] due

---

justification for these violations. Accordingly, Mr. Beckmann and his client are also subject to an appropriate sanction under Rule 26(g)(3).

process rights under the Fifth Amendment," with consideration given to "the goals of enforcing the process of discovery and ensuring adherence to policy aims of discovery [and] the right of a party to have its case heard on the merits." *See Card Tech. Corp. v. DataCard Inc.*, 249 F.R.D. 567, 571 (D. Minn. 2008).

Because State Farm has now received critical information that is responsive to its discovery requests, and frankly, provides support for its defense of this case, the Court concludes it is unnecessary and likely unhelpful to require a forensic examination of Mr. Darmer's computers. The Court also finds that it is not necessary to strike the Original Repair Contract and Original Repair Estimate from the record based on State Farm's assertion that they are "false and misleading documents." Although State Farm has made a strong showing that it was misleading for Mr. Darmer to provide the original contract documents without simultaneously submitting the amended contract documents, the import of the Amendment to Contract and Amended Repair Estimate is in dispute.

Further, the Court finds it unnecessary to enter a sanction striking Paragraph 8 from Mr. Darmer's Second Amended Complaint, which asserts that on the date of the fire, "the City of St. Paul declared the property a total loss." State Farm contends that this is demonstrably false, and one of the Brown/Darmer emails reveals that Mr. Darmer knows that is the case. However, if Mr. Darmer does not remove this allegation on his own, State Farm now has the email in question and will be able to cross examine Mr. Darmer with his own statements from that email to potentially convince a jury that its view of the facts is correct.

Finally, the Court has seriously considered State Farm's request for the Court to: (1) take certain matters regarding Mr. Darmer's discovery conduct as established in the litigation pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i); and (2) provide certain adverse inference instructions to the jury concerning that discovery conduct pursuant to its inherent powers. [Sanctions Mem. at 45 ¶¶ 1–3; *id.* at 47–48 ¶¶ 1–3.] Here, taking certain matters as established and imposing the adverse inference instructions would be too harsh a sanction in light of the fact that State Farm now has available to it significant evidence that it can use to support its claims. The power of such sanctions upon a jury's consideration of the merits of a case is considerable, and the Court finds it is unnecessary in this proceeding. However, in this Court's view, the jury should be permitted to hear about the discovery abuses that occurred in this case and draw the inferences from that conduct that it sees fit. *Cf. Garcia v. City of Santa Clara*, 2017 WL 1398263, at *4 (N.D. Cal. Apr. 19, 2018) (declining to give an adverse inference instruction in a case involving spoliation of a report where the plaintiff received other copies of the evidence, but finding that

"the jury should be permitted to hear about the missing report and to draw whatever inferences it chooses"). The District Court, of course, exercises authority over the trial process and will determine the appropriate scope of witness questioning. However, in this Court's view, Mr. Darmer's failure to produce the Amendment to Contract and the Amended Repair Estimate, as well as his failure to produce all the Brown/Darmer emails and subsequent removal of those emails from his original production in violation of the October Order should be fair game for robust cross examination.

## III.     Order and Recommendation

For the reasons discussed above, **IT IS HEREBY ORDERED THAT**

1.      State Farm's Motion for Sanctions Under Fed. R. Civ. P. 37(b) and the Court's Inherent Power **[ECF No. 233]** is **GRANTED IN PART** as stated above.

2.      **Within 14 days of this Order**, State Farm shall submit a petition for the expenses, including attorney's fees, incurred in making its motion for sanctions and in connection with the second depositions of Mr. Brown and Mr. Kosek. **Within 14 days of being served with State Farm's fee petition**, Mr. Darmer shall file any response regarding the reasonableness of the fees requested. **Within 7 days of being served with Mr. Darmer's response**, State Farm may file a reply in support of its fee petition. Upon receipt of such briefing, the matter will be taken under advisement without a hearing, unless the Court determines that a hearing is necessary.

**IT IS HEREBY RECOMMENDED THAT:**

3.      State Farm be permitted to conduct cross-examination regarding:
(a) Mr. Darmer's failure during the discovery process to produce the Amendment to Contract and the Amended Repair Estimate; and (b) his failure to produce initially all the Brown/Darmer emails, the October Order's requirements, and his subsequent removal of all Brown/Darmer emails from his supplemental November 2018 production.

Date: October 28, 2019                              *s/Katherine Menendez*
                                                    Katherine Menendez
                                                    United States Magistrate Judge